**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**
**STATE OF LOUISIANA**

NO: 2016- 9632                                      DIVISION "_____"

**COURTNEY HEBERT, INDIVIDUALLY AS SOLE BENEFICIARY OF**
**THE COURTNEY HEBERT IRREVOCABLE TRUST AND ON BEHALF**
**OF THE COURTNEY HEBERT IRREVOCABLE TRUST**

**VS.**

**RICHARD J. HEBERT, RICHARD J. TOMENY, JR., LILLIAN LUCILLE**
**LOCICERO AND FIRST NBC, A CORPORATION LICENSED TO DO AND**
**DOING BUSINESS IN THE STATE OF LOUISIANA**

FILED:_____          _____
                                                **DEPUTY CLERK**

**PETITION FOR RECOVERY OF DIVERTED AND CONVERTED TRUST**
**FUNDS, FOR BREACH OF FIDUCIARY DUTY TO A TRUST AND ITS**
**BENEFICIARY AND FOR DECLARATORY JUDGMENT THAT THE**
**MOVABLE PROPERTY CONVERTED FROM THE TRUST SHOULD BE**
**DECLARED THE PROPERTY OF THE BENEFICIARY, FOR UNJUST**
**ENRICHMENT, FOR REVENDICATORY ACTION AND FOR DAMAGES**

NOW INTO COURT come Courtney Hebert, individually as sole beneficiary

of the Courtney Hebert Irrevocable Trust and on behalf of the Courtney Hebert

Irrevocable Trust (hereinafter "plaintiffs") and state as follows:

1.

The defendants in this matter are Richard J. Hebert, Richard J. Tomeny, Jr.,

Lillian Lucille LoCicero and First National Bank of Commerce, a corporation licensed

to do and doing business in the State of Louisiana.

2.

Courtney Hebert is the sole beneficiary in the Courtney Hebert Irrevocable Trust

(hereinafter "Trust") which Trust was established by her father, Michael Allen Hebert,

on December 30, 1992.

3.

Michael Allen Hebert made himself the Trustee in said Trust. Michael Allen

Hebert died on April 10, 2012. Richard J. Hebert, his brother, was named in the Trust

EXHIBIT
**D**

as the Successor Trustee in the event that the original trustee was unable to continue as trustee.

4.

On information and belief, Richard J. Hebert (hereinafter "Hebert") did not petition any court to have him named as the Successor Trustee in said Trust, nor was any order issued to that effect. He was not qualified as Trustee of said Trust in any court nor did he take an oath of office as trustee.

5.

After her father's death, Hebert, acting as trustee, called Courtney Hebert on the telephone on multiple occasions insisting that she pay Muriel Hebert, his mother, and Lillian Lucille LoCicero, his aunt, $350,000.00 for a loan they made to Michael Allen Hebert approximately 20 years ago. Prior to those calls, and very shortly after her father's death, she was told at a meeting in which Hebert, Muriel Hebert and Lillian Lucille LoCicero (hereinafter "LoCicero") were present that she should give $350,000.00 to Muriel and LoCicero.

6.

On information and belief, Hebert withdrew less than $1,000.00 from the Courtney Hebert Irrevocable Trust account at First National Bank of Commerce, account #31471 in early July, 2012.

7.

On information and belief, Hebert withdrew an additional amount of approximately $509,000.00 from the Courtney Hebert Irrevocable Trust account #31471 at First National Bank of Commerce on or about July 19, 2012, which sum amounted to the entirety of said account.

8.

Hebert did not notify Courtney Hebert of or obtain her consent to either of said withdrawals. Hebert and his attorney Richard J. Tomeny, Jr. refused to tell Courtney Hebert and her attorney what Hebert had done with the money for months, despite repeated inquiries by Courtney Hebert and her attorney. The action of the trustee Hebert in withdrawing $509,000.00 from the First NBC account of the Courtney Hebert Irrevocable Trust without her knowledge or consent and refusing to tell her what he had done with the money is not authorized by any of the terms of the Trust. Under La. R.S. 9:2082 a trustee shall administer the trust solely in the interest of the beneficiary. Failure to do so is considered a breach of the duty of loyalty and the action of the trustee Hebert was, on its face, not in the interest of the sole beneficiary, Courtney Hebert. Under La. R.S. 2091, a trustee is under a duty to the beneficiary to take reasonable steps to take, keep control of and preserve the trust property. The action of the trustee herein, Hebert, was, on its face, a clear violation of his duty to preserve the trust property.

9.

First National Bank of Commerce (hereinafter "First NBC") had no authority under the Trust or otherwise to release said amounts to Hebert.

10.

The actions by Hebert outlined above demonstrated a conflict of interest on the part of Hebert *vis a vis* his mother and aunt on the one hand and Courtney Hebert, the beneficiary of the Courtney Hebert Irrevocable Trust on the other which resulted in hostility by Hebert against Courtney Hebert. This conflict of interest and attendant hostility materially impaired, interfered with and adversely affected the administration of the Trust and the interest of the beneficiary, Courtney Hebert.

11.

All states recognize that the fundamental duty that a Trustee owes a beneficiary is the duty of loyalty. La. R.S. 9:2082, comment (c). The trustee is subject to the highest degree of fidelity and undivided loyalty to the trust beneficiary with regard to the administration of a trust.

12.

Under La. R.S. 9:2082, a trustee shall administer the trust solely in the interest of the beneficiary. Failure to do so is considered a breach of the duty of loyalty.

13.

A trustee is held to a higher fiduciary responsibility to his beneficiary than that owed by a succession representative to heirs. *Albritton v. Albritton*, 622 So.2d 709 (La. App. 1st Cir. 1993)

14.

Under La. R.S. 9:2091, a trustee is under a duty to the beneficiary to take reasonable steps to take, keep control of and preserve the trust property.

15.

The withdrawal of approximately $509,000.00 by Hebert from the Trust account at First NBC and the subsequent conversions of same to third parties and himself violated all of the duties and responsibilities of a trustee set out above.

16.

Under La. R.S. 9:2201 (comments), the violation by a trustee of his duties as trustee renders him liable for any loss therefrom.

17.

First NBC should not have released said $509,000.00 to Hebert and is also liable to Courtney Hebert for any and all losses she sustained as a result of the withdrawal of

the amounts set out above and the subsequent conversions of same to third parties and Hebert.

18.

Hebert improperly converted and diverted funds from the Courtney Hebert Irrevocable Trust (hereinafter "Trust") to his aunt, Lillian Lucille LoCicero (hereinafter "LoCicero"), and himself.

19.

Unknown to plaintiffs, on November 10, 2014 Hebert wrote a check out of the Trust to LoCicero for $219,000.00.

20.

Unknown to plaintiffs, on September 25, 2015 Hebert wrote a check out of the Trust to himself for $106,000.00.

21.

On October 19, 2015 Hebert wrote a check for $170,517.75 to Courtney Hebert out of the Trust account.

22.

The $219,000.00, $106,000.00 and $170, 517.15 add up to $495,517.75.

23.

On July 19, 2012, the day Hebert withdrew all of the Trust funds from First NBC, said funds amounted to approximately $509,000.00.

24.

Neither Hebert nor his attorney Richard J. Tomeny, Jr. (hereinafter "Tomeny") have ever accounted for the interest income which should have accumulated since July 19, 2012, which amounted to approximately $48,991.63 as of July 31, 2016.

25.

At all times pertinent herein Tomeny represented Hebert against plaintiff Courtney Hebert in that his (Hebert) interests and that of his aunt, LoCicero, were diametrically opposed to Courtney Hebert, the principal and income beneficiary of the Trust.

26.

On information and belief, Hebert paid Tomeny approximately $12,800.00 in attorney's fees, all of which was paid for with Trust funds and without the knowledge of plaintiff and sole beneficiary Courtney Hebert.

27.

All of the above amounts were improperly taken by Hebert, acting as the trustee of the Trust, from the Trust, without authorization of or basis in either the Trust instrument or the Trust Code and, further, were improperly paid by Hebert to third parties and/or himself, also without authorization of or basis in the Trust Code or the Trust instrument.

28.

Louisiana law allows a beneficiary to trace and recover assets taken improperly from her trust, and gives her a right of action against third parties to enforce a right of the Trust. La. C.C. Art. 526, La. R.S. 9:2222.

29.

Courtney Hebert as sole beneficiary to the Trust is entitled to enforce a right of the Trust estate under La. R.S. 9:2222; she is entitled to recover converted funds under a revendicatory action under La. C.C. Art. 526; she is also entitled to do so on the basis of the return of a thing not owed under La. C.C. Art. 2299 and on the basis of enrichment without cause under La. C.C. Art. 4 and Art. 2298.

30.

La. C.C. Art. 526 authorizes the revendicatory action and provides:

"The owner of a thing is entitled to recover it from anyone who possesses
or detains it without right and to obtain judgment recognizing his
ownership and ordering delivery of the thing to him."

31.

Plaintiffs assert herein an "innominate real action" for the recovery of movable

property under the law of revendication. La. C.C. Art. 526.

32.

Plaintiffs assert herein, their right under the law of revendication to an

accounting and a declaratory judgment that the above-referenced movable property

(*i.e.,* funds) converted from the Trust be declared their property, and further petition

the Court an for an order compelling Hebert, Tomeny and LoCicero to account for and

deliver said property.

33.

On information and belief, Tomeny was aware of Hebert's conversion of the

above-referenced funds from the Trust and failed to have Hebert supply plaintiff/sole

beneficiary Courtney Hebert with an accounting of said Trust despite being requested

to do so on multiple occasions and despite being required to do so under law and under

the Trust. The last time this request was made was in a written request on July 6, 2015

in which Tomeny was told to immediately advise as to the amount of money that was

in the Courtney Hebert Trust account and to fax over to her attorney the latest

statement of the Trust account. A Request for Production of Documents requesting

production of the latest bank statement detailing the amount of money presently in the

Courtney Hebert Irrevocable Trust was served on Hebert through Tomeny on July 3,

2015. No accounting was ever made by Hebert until October 19, 2015.

34.

On September 25, 2015, a "Rule to Show Cause Why Richard J. Hebert Should Not be Removed as Trustee of the Courtney Hebert Irrevocable Trust" filed by Courtney Hebert and scheduled for hearing that day in Civil District Court was continued in exchange for Hebert's attorney (Tomeny) signing a consent judgment on behalf of his client Hebert. On that same day, and unknown to Courtney Hebert and her attorney, Hebert paid himself $106,000.00 (referred to above) out of the Trust account, leaving only $170,517.75 in said Trust account.

35.

Hebert, acting as he was as trustee for the Trust, breached his fiduciary duties to the Trust by diverting and converting funds from that Trust for his own personal use and that of his aunt, by using Trust funds to pay attorney's fees to his personal attorney who was representing Hebert against Courtney Hebert and the Trust and by failing to hold or invest the Trust's income for the benefit of the Trust and the sole beneficiary of said Trust, Courtney Hebert.

WHEREFORE, plaintiffs pray that, after due proceedings had, there be judgment in favor of plaintiffs, Courtney Hebert, individually as sole beneficiary of the Courtney Hebert Irrevocable Trust and Courtney Hebert on behalf of the Courtney Hebert Irrevocable Trust:

1.     Declaring that the $219,000.00 and the $106,000.00 taken out of the Courtney Hebert Irrevocable Trust and paid to Lillian Lucille LoCicero and Richard J. Hebert, respectively, is the property of Courtney Hebert and the Courtney Hebert Irrevocable Trust;

2.     Ordering Richard J. Hebert and Lillian Lucille LoCicero to account for and deliver said funds to Courtney Hebert together with all interest on said funds from July 19, 2012 until paid;

3.   Ordering Richard J. Hebert and Richard J. Tomeny, Jr. to return to Courtney Hebert and the Courtney Hebert Irrevocable Trust the $12,800.00 paid to Richard J. Tomeny, Jr. as attorney's fees including interest on same from the earliest date allowed by law;

4.   Ordering Richard J. Hebert and Richard J. Tomeny, Jr. to pay Courtney Hebert the interest due on the $509,303.77 that was in the Trust as of July 19, 2012, from July 19, 2012 until paid; and

5.   Awarding damages against Richard J. Hebert, Richard J. Tomeny, Jr., First NBC and Lillian Lucille LoCicero reasonable in the premises including court costs, attorney fees and interest from the earliest date allowed by law.

Respectfully submitted,

ROY A. RASPANTI - (La. Bar No. 11119)
110 Veterans Boulevard - Suite 360
Metairie, Louisiana 70005-4930
Telephone: (504) 835-5388
Attorney for Courtney Hebert

**PLEASE SERVE:**

Richard J. Hebert
29 Seven Oaks Road
Marrero, Louisiana 70072

Lillian Lucille LoCicero
29 Seven Oaks Road
Marrero, Louisiana 70072

Richard J. Tomeny, Jr.
Two United Plaza
8550 United Plaza Boulevard
Suite 702
Baton Rouge, Louisiana 70809

First National Bank of Commerce
Through its registered agent for service of process
Marsha Crowle
210 Baronne Street
New Orleans, Louisiana 70112

Civil District Court for the Parish of Orleans
STATE OF LOUISIANA

No.   2016 - 09632                                                                    Section:   13 - M

HEBERT, COURTNEY
versus
HEBERT, RICHARD J. ET AL

Date Case Filed:   9/26/2016

NOTICE OF STATUS CONFERENCE

TO:

Roy A Raspanti Esq            11119
Ste 360
110 Veterans Blvd
Metairie          LA 70005-4930

PLEASE TAKE NOTICE: The above numbered and entitled cause has been fixed for status conference
on January 17, 2018    , at 10:00 o'clock AM , and appears        on the Docket.

New Orleans, Louisiana.
November 17, 2017

MINUTE CLERK

VERIFIED
11/21/17

ENTERED ON MINUTES

NOV 21 2017

Yodonnaliso Harris

Filed by:
Legal Wings

FILED

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

2018 MAY 31 P 3:37

CIVIL
DISTRICT COURT

NO: 2016-9632                                    DIVISION "M"

COURTNEY HEBERT, INDIVIDUALLY AS SOLE BENEFICIARY OF
THE COURTNEY HEBERT IRREVOCABLE TRUST AND ON BEHALF
OF THE COURTNEY HEBERT IRREVOCABLE TRUST

CLERK, CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
VS.       421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS, LA 70112

RICHARD J. HEBERT, RICHARD J. TOMENY, JR., LILLIAN LUCILLE
LOCICERO AND FIRST NBC, A CORPORATION LICENSED TO DO
AND DOING BUSINESS IN THE STATE OF LOUISIANA

Receipt Number    698951
FILED: _____
Cashier           ehankston
Register          CDCCASH1
**DEPUTY CLERK**
Case Number       2016-09632

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Amount Received   $224.00
NOW INTO COURT comes plaintiff, Courtney Hebert Griffin, through
Over Payment      $0.00

undersigned counsel and moves this Honorable Court for partial summary judgment
Receipt Date      05/31/2018 3:40.00 PM

in the above-captioned matter for the reasons more fully set out in the attached

| Item | Charged | Paid | Bal |
|------|---------|------|-----|
| Motion for Summary Judgment | $94.00 | $94.00 | $0.00 |
| Exhibits (Paper) | $130.00 | $130.00 | $0.00 |

Memorandum.

Respectfully submitted,

Check # 3581 $224.00



ROY A. RASPANTI - (La. Bar No. 11119)
110 Veterans Boulevard - Suite 360
Metairie, Louisiana 70005-4930
Telephone: (504) 835-5388
Attorney for Courtney Hebert Griffin

FILED

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA   2018 MAY 31 P 3: 37

NO: 2016-9632                                          DIVISION "M"

DISTRICT COURT

## COURTNEY HEBERT, INDIVIDUALLY AS SOLE BENEFICIARY OF THE COURTNEY HEBERT IRREVOCABLE TRUST AND ON BEHALF OF THE COURTNEY HEBERT IRREVOCABLE TRUST

### VS.

## RICHARD J. HEBERT, RICHARD J. TOMENY, JR., LILLIAN LUCILLE LOCICERO AND FIRST NBC, A CORPORATION LICENSED TO DO AND DOING BUSINESS IN THE STATE OF LOUISIANA

**FILED:**_____        _____

                                          **DEPUTY CLERK**

### ORDER

Considering the foregoing motion,

IT IS ORDERED that defendants Richard J. Hebert and Richard Tomeny show

cause on the _____ day of _____, 2018, at _____ a.m. why

summary judgment should not be rendered in favor of plaintiff.

New Orleans, Louisiana, this _____ day of _____, 2018.

                              _____

                              JUDGE GIARRUSSO



FILED

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA 2018 MAY 31 P 3: 37

NO: 2016-9632                                            CIVIL DIVISION "M"

DISTRICT COURT

### COURTNEY HEBERT, INDIVIDUALLY AS SOLE BENEFICIARY OF THE
### COURTNEY HEBERT IRREVOCABLE TRUST AND ON BEHALF OF THE
### COURTNEY HEBERT IRREVOCABLE TRUST

### VS.

### RICHARD J. HEBERT, RICHARD J. TOMENY, JR., LILLIAN LUCILLE
### LOCICERO AND FIRST NBC, A CORPORATION LICENSED TO DO AND
### DOING BUSINESS IN THE STATE OF LOUISIANA

FILED:_____

**DEPUTY CLERK**

## CERTIFICATE

This is to certify that the Motion for Partial Summary Judgment in the above-captioned matter has been served upon defendant Richard J. Hebert through his attorney of record David L. Colvin at 230 Huey P. Long Avenue, Gretna, Louisiana 70053 and upon Richard J. Tomeny, Jr. at Two United Plaza, 8550 United Plaza Boulevard, Suite 702, Baton Rouge, Louisiana by United States mail on May 23, 2018.

Respectfully submitted,

ROY A. RASPANTI - (La. Bar No. 11119)
110 Veterans Boulevard - Suite 360
Metairie, Louisiana 70005-4930
Telephone: (504) 835-5388
Attorney for Courtney Hebert Griffin



FILED

2018 MAY 31  P 3: 37

CIVIL
DISTRICT COURT

TRUST INSTRUMENT

December 30, 1992

Establishing the

COURTNEY HEBERT IRREVOCABLE TRUST

MICHAEL HEBERT

Settlor

MICHAEL HEBERT

Trustee



EXH. A.

STATE OF LOUISIANA

PARISH OF ORLEANS

<u>TRUST INSTRUMENT</u>

COURTNEY HEBERT IRREVOCABLE TRUST

**BEFORE ME**, the undersigned Notary Public and competent witnesses, personally came and appeared:

**MICHAEL HEBERT**, a person of the full age of majority and a resident of and domiciled in the Parish of Orleans, State of Louisiana (hereinafter, the **SETTLOR**);

The term "Trustee" used herein shall refer to the original trustee as well as any successor or alternate, and any other Trustee whether one or more. The original **Trustee**, hereby accepts this appointment and agrees to be bound by the provisions of this Trust Instrument.

-2-

WHO DECLARED:

## I.   TRUST PROPERTY

The trust property shall consist of all of the property listed and described on Schedule A attached hereto and made a part hereof, together with such other property as may be added by **SETTLOR** or by third persons. The **SETTLOR** hereby convey to **TRUSTEE**, in trust, all of their individual and community rights, title and interest in the property listed and described on Schedule A to be held and administered as trust property in accordance with the terms and covenants of this Trust Instrument.

## II.   TRUST

2.1   **Trust.**   A single trust is hereby created.   The name of the trust shall be the **COURTNEY HEBERT IRREVOCABLE TRUST**.

2.2   **Irrevocability.**   The trust shall be irrevocable.

2.3   **Children.**   This trust is created for the benefit of **COURTNEY HEBERT** (hereinafter "Child").

## III.   INCOME BENEFICIARY

3.1   **Original Income Beneficiary.**   Courtney Hebert shall be the original income beneficiary of this trust.

3.2   **Substitute Income Beneficiary.**   In the event of the death of **COURTNEY HEBERT**, this trust shall terminate and there shall be no substitute income beneficiary.

## IV.   PRINCIPAL BENEFICIARY

4.1   **Original Principal Beneficiary.**   The Child shall be the original principal beneficiary of this trust.

-3-

## V.   ALIENATION BY THE BENEFICIARY

The interest of the principal beneficiary shall be subject to the maximum spendthrift restraints permitted by the laws of the State of Louisiana.

## VI.   TERMINATION

**6.1   Termination.** This trust shall terminate at 12:01 a.m., December 31, 2034, provided, however, that Settlor specifically delegate to trustee, and only upon written concurrence of all beneficiaries, the power to amend the trust to provide for a longer term which term, however, may not extend beyond the death of the last surviving beneficiary; and provided further that if the Settler dies prior December 31, 2034, then this trust shall terminate at 12:01 a.m., December 31, 2015.

**6.2   Trustee Discretion.** The Trustee may terminate the trust at any time, if, in his sole discretion, the value of the trust property no longer justifies the expense of trust management.

**6.3   Disposition at Termination.** Upon any termination of the trust, the Trustee shall deliver, free of trust, to the beneficiary the principal of the trust and all accumulated income, if any, and all investments and reinvestments thereof.

## VII.   POWERS OF THE TRUSTEE

**7.1   General Powers.** The Trustee shall have all of the powers that may be conferred upon trustees under applicable law. The trustee shall have the power to open bank accounts for the trust and shall be a signatory thereto. If a question should arise as to whether the Trustee has a particular power, this Trust Instrument

-4-

shall be liberally construed as granting such power. Should further changes in the law expand the powers of trustees, the Trustee shall have those expanded powers.

7.2 **Additional Powers.** Without limiting the completeness and generality of the Trustee's powers granted by the preceding paragraph, should those powers not include the following, the Trustee shall also have all of the powers enumerated in the remainder of this Paragraph VII.

7.3 **Commingling.** To commingle the trust property of the trust created herein with the trust property of any other trust created for the benefit of the beneficiary of the trust created herein, whether for investment, administrative of other purposes, allotting to each separate trust an undivided interest in the commingled trust property which shall always be equal to that trust's proportionate contribution to the commingled trust property.

7.4 **Contracts.** To enter into all contracts and to take all such action with respect to the trust property as a fully competent individual could take with respect to his own property.

7.5 **Purchases and Sales.** To purchase, sell, exchange, partition or otherwise acquire and dispose of trust property, at public or private sale for such purposes and upon such terms, including sales on credit, with or without security, in such manner, and at such prices as Trustee may determine; to purchase property for the trust from, or to sell trust property to, himself as Trustee and to sell trust property to any other trust whether created herein or not; to purchase for the benefit of the trust

-5-

created herein its own stocks, its bonds, or other securities or
the stocks, bonds, or other securities of any affiliate; to loan
and/or borrow such sums on such terms and conditions as are
reasonable in the discretion of the Trustee.

   **7.6   Operation of Businesses; Changes in Corporate Structure.**
To continue to operate or participate in the operation of any
business interest received by the Trustee for the trust, either as
original trust property or otherwise, so long as Trustee may deem
it advisable, to change the nature of the business, or enlarge or
diminish the scope of its activities, to dissolve or liquidate it,
or to participate in any incorporation, change, merger,
consolidation, reorganization, dissolution or liquidation.    To
participate in any plan of liquidation, reorganization,
consolidation or merger involving any company or companies whose
stock or other securities may be subjected to any plan or
reorganization alone or with any protective committee and to
delegate to such committee discretionary powers relative thereto
and to pay a proportionate part of the expenses of such committee
and any such assessments levied upon such plan; to accept and
retain new securities received by the Trustee pursuant to any such
plan; to exercise all conversion, subscription, voting and other
rights of whatsoever nature pertaining to such property; and to pay
any amount or amounts of money Trustee may deem advisable.

   **7.7   Options.**  To grant options affecting trust property for
such purposes and periods, upon such condition, in such manner, and
at such prices as Trustee may determine.   To purchase or receive

-6-

options for periods that may extend beyond the term of the trust, and, when **Trustee** may deem it advisable, to exercise them for such price and on such terms and conditions as Trustee may see fit.

**7.8  Servitudes and Easements.**  To create servitudes or easements on trust property for such purposes and periods, which may extend beyond the termination of the trust, upon such conditions, in such manner and at such price as **Trustee** may determine.

**7.9  Leases.**  To lease or give options to lease all or any part of the trust property for such price, and on such terms and conditions, for such purposes and at such rentals as **Trustee** may see fit, and for terms and periods that may extend beyond the term of the trust; to enter into, amend or extend all kinds of leases including but not limited to all kinds of predial leases, surface leases, oil and gas and mineral leases, with or without pooling provisions.

**7.10  Oil, Gas and Other Minerals.**  To sell, lease, exchange, partition or otherwise alienate oil, gas or other minerals and interests therein, and the right to explore for them, or options for any of these, by such instruments, in such forms, for such bonus, rentals or other considerations, and for such terms and periods as **Trustee** may see fit, which may extend beyond the term of the trust.  To invest in, to acquire and retain for so long a period as **Trustee** may see fit, oil, gas and mineral leases and rights in and to oil, gas and other minerals either in the form of mineral interests, royalties or other proprietary or working

-7-

interests, whether productive when acquired or non-productive when acquired, whether or not speculative in nature, with or without pooling provisions, to explore or to contract for mineral exploration and to drill and to enter into pooling, unitization, repressurization, and any other type of agreement relating to the development, operation and conservation of mineral property that, in Trustee's judgment is best for the trust.

7.11 Partnerships. To become a partner in such partnerships as Trustee may see fit, whether as a limited or general partner, or partner in commendam, for periods that may extend beyond the term of the trust.

7.12 Borrowing. To borrow money by obligation either unsecured or secured, in such amounts, on such terms at such rates of interest or without interest, and in such manner as Trustee may think desirable and to secure such loans by mortgage, pawn or pledge of trust property or otherwise, and to mortgage or pledge trust property for any period of time Trustee shall think desirable, even beyond the term of the trust. If a corporate trustee, to borrow money from its own banking department or from anyone else, for any purpose in connection with the administration of the trust.

7.13 Lending. To make loans of trust property to such persons, firms, partnerships, corporations or political subdivisions, including businesses or business interests as Trustee may hold in trust, and to beneficiaries of this trust, for such purposes and for such periods, in such amounts and at such rates of

-8-

interest, with or without security, and subject to such other terms as Trustee may determine.

7.14 **Exchanges.** To exchange trust property for other property or to give options to exchange trust property upon such terms as Trustee may deem advisable.

7.15 **Retention of Trust Property.** To hold and retain trust property in the form received so long as Trustee deems advisable, and to purchase and retain securities or other properties, although of a kind or in an amount that would not ordinarily be considered suitable for trust investment, whether or not such property is productive of income and even though it may not be prescribed or authorized by any laws relating to the investment of trust property, even to the extent of keeping all of the trust fund in one type of property, even though the total amount of cash so held shall be disproportionate under the laws applicable to the administration and investment of trust property and even though the period of time in which the cash so held shall be longer than otherwise would be permitted.

7.16 **Distributions.** The Trustee may, but is not required, to make distributions or divisions of trust property at values fairly and equitably determined by the Trustee, and, when dividing or distributing funds or paying trust principal, to make such payment, division or distribution wholly or partly in kind by allotting and transferring specific movable or immovable property or undivided interests therein as part of the whole or any share or payment, at current value.

-9-

7.17 **Improvements.** To raze any buildings or other structures as the Trustee may consider expedient; to improve or develop immovable property; to erect, alter, or repair any buildings or other structures and to make any other kind of improvements Trustee may deem proper; to receive, accept, hold, use, control, administer, build upon, manage or otherwise improve, repair, divide or subdivide all or any trust property in the same manner and to the extent Trustee may deem advisable.

7.18 **Allocations of Receipts and Disbursements.** To determine which receipts shall be charged or credited to income and which to principal in any manner that fairly and equitably reflects a proper allocation between principal and income and to treat as income the whole of the interest, dividends, rents, royalties or similar receipts from trust property, whether wasting assets or not and even if bought or taken at a value above par; to treat as income or principal or to apportion between them stock dividends, extraordinary dividends, rights to take stocks or securities and the proceeds from the sale of immovable property, although such immovable property may have been partly or wholly unproductive; to charge to income or principal or apportion between them any expense of making or changing investments, brokers' commissions, agents' compensation, attorney and accountant fees and repairs or improvements, taxes, depreciation charges and trustee compensation; and, generally to determine all questions as between principal and income and to credit or charge to either or to apportion between them any receipt or gain and any charge, disbursement or loss as is

-10-

seemed advisable in the circumstances of each case as it arises, notwithstanding any statute or rule of law for distinguishing income from principal or any determination of the courts.

**7.19 Agents and Employees.**   To employ or retain such employees, agents and advisors as Trustee may deem necessary to assist in performing any duties of trustee, including, but by way of illustration only, investment advice, management advice and for any other purposes the Trustee considers advisable, and to determine reasonable charges for such services and to make payment therefor out of trust property.

**7.20 Mutual Funds.**  To acquire and retain for so long a period as Trustee may see fit the shares, preferred or common, of investment companies, or investment trusts, whether of the open-end or closed-end type and without notice to anyone, to participate in any common trust fund maintained by any corporate trustee at any time serving hereunder.

**7.21 Life Insurance.**  To insure the life of the beneficiary or the life of any other person in whose life the beneficiary of the trust may have an insurable interest.  Life insurance shall be in such amounts as the Trustee may determine, and in such forms, as Trustee may deem wise, by term insurance, whole life insurance, stated period payment insurance, endowment insurance or any other kind of life insurance.  Proceeds of life insurance shall be made payable to the trust held for the beneficiary whether the insurance is on that beneficiary's life or on the life of a third person. Trustee may elect any option provided by any policy.  Trustee may

-11-

surrender any of such policies at any time and obtain the cash surrender value, or may borrow against such value, or may exercise any other right of an owner of the policy. The proceeds of each of such policies, whether collected before or after the death of the named insured, shall be added to the principal of the trust.

**7.22 Custody and Location of Trust Property.** To keep all or any part of the trust property at any place in Louisiana or elsewhere within the United States or abroad with such depositories or custodians and at such places as Trustee shall deem necessary or advisable and shall have the power to hold securities in the names of nominees.

**7.23 Powers of Attorney.** To give such powers of attorney, general or special, with or without power of substitution, in connection with the exercise of other powers as Trustee may deem advisable.

**7.24 Miscellaneous Agreements.** The Trustee may enter any and all kinds of agreements whether or not specifically described in this paragraph.

**7.25 Disclaimers.** The Trustee, on behalf of all of the beneficiaries, shall have the power to disclaim, renounce or refuse any original trust property or any additions to trust property in whole or in part whether inter vivos or mortis causa.

VIII.   **SPECIAL POWERS OF THE TRUSTEE**

**8.1   Distributions/Original Income Beneficiary.** The trustee shall have full discretion and control as to the amount and time of distributions to the original income beneficiary. The trustee may

-12-

accumulate income as he sees fit, taking into account funds available to the beneficiaries from all other sources known to the trustee.

**8.2  Distributions.**  The Trustee shall have full discretion and control as to the amount and time of distributions to the income beneficiary.  The Trustee may accumulate income as he sees fit, taking into account funds available to the beneficiary from all other sources known to the Trustee.

**8.3  Invasion/Income Beneficiary.**  Should **Trustee** determine that either of the original income beneficiary need resources for health, maintenance or support in addition to their interest in the trust, and in addition to and taking into account funds available from other sources known to the Trustee, Trustee is authorized to make one or more distributions to that income beneficiary from accumulated income, even though such distribution thereby impairs the interest of another beneficiary.  In making such distributions the **Trustee** shall be guided by the beneficiary's immediate needs without regard to the future needs of that beneficiary or of the future needs of other beneficiaries.

**8.4  Invasion/Principal  Beneficiaries.**   Should **Trustee** determine that a principal beneficiary needs resources for health, education, maintenance or support in addition to his interest in the trust, and in addition to and taking into account funds available from other sources known to the **Trustee**, **Trustee** is authorized to make one or more distributions to that principal beneficiary from accumulated income or principal.  In making such

-13-

distributions the Trustee shall be guided by the beneficiary's immediate needs without regard to the future needs of that beneficiary.

**8.5  Partial Distribution.** Should the Trustee determine that the principal beneficiary needs resources for the start of a new business enterprise or organization, which has merit, in the Trustee's sole and uncontrolled discretion, or desires to purchase his or her first principal residence. The Trustee may distribute up to twenty-five (25%) percent of the principal and accumulated income available at that time. This shall be a one time distribution and shall reduce the interest of the recipient principal beneficiary.

**8.6  Health.** The Trustee may determine that a beneficiary needs resources for health whenever Trustee is advised by a practicing, licensed physician that the beneficiary needs particular care, attention or treatment, and Trustee is advised that the beneficiary will avail herself of such medical care, attention or treatment. If, in an emergency, a beneficiary is unable to give such consent, the physician's advice shall be sufficient.

**8.7  Education.** Trustee may determine that a beneficiary needs resources for education whenever Trustee is advised by any person who is an educator by occupation or profession that participation in a particular class of instruction, educational endeavor, course of study, or enrollment in a particular school, college or university or institution of learning would be

-14-

beneficial to the beneficiary, and **Trustee** is advised that the beneficiary will so avail himself.

8.8  **Maintenance and Support.**  The **Trustee** may determine that a beneficiary needs resources for maintenance and support whenever the beneficiary lacks sufficient income and resources available from all sources known to **Trustee** to maintain a reasonable standard of living.

8.9  **Facility of Payment.**  The **Trustee** may make payment by any reasonable method, including the following:

a.   directly to the beneficiary;

b.   directly to the tutrix or tutor of the beneficiary;

c.   to the legally appointed guardian of the beneficiary;

d.   by disbursing such amounts directly for the benefit of the beneficiary;

e.   by depositing all or any part of the income into a checking or savings account in a bank, savings and loan association or other depository in the name of the beneficiary; or

f.   to another trust for the benefit of the same beneficiary.

### IX.  THE OFFICE OF THE TRUSTEE

9.1  **Bond.**  No **Trustee** shall be required to furnish bond.  No corporate trustee shall be required to furnish any security for the deposit of trust funds in its banking department.

9.2  **Liability.**  **Trustee** is relieved from all liability in connection with administration of the trust, except for liability for breach of the duty of loyalty to the beneficiary or for breach

-15-

of trust committed in bad faith.  If in the Trustee's best judgment this **Trust Instrument** should not be recorded in the public records, Trustee is absolved of all liability for failure to record in good faith.

9.3  **Compensation.**  The Trustee shall be entitled to receive reasonable compensation for his services.  A corporate trustee shall be entitled to fix its compensation in accordance with its schedule as may be in effect from time to time, and may make payments to itself out of trust property.

9.4  **Accounting.**  Trustee shall render such accountings as are required by law.

9.5  **Attorneys; Successors.**  Trustee shall have the power to relieve any attorney for the trust and to designate a successor. The **Trustees** shall be fully protected in any action taken, suffered or performed in good faith, in accordance with the opinion of an attorney named above.

9.6  **Resignations.**  A **Trustee** desiring to resign shall deliver written notice to the **Settlor** and beneficiary.  Notice of resignation shall be in authentic form and shall bear the effective date of resignation which shall be not less than thirty (30) days after its delivery.  Third persons shall be entitled to rely upon the notice of resignation.

9.7  **Successors.**  In the event that the original Trustee is unable or unwilling to continue as trustee or resigns as trustee, Richard J. Hebert shall be the successor trustee; and, if he is unable or unwilling to serve, then Algiers Homestead shall be named

-16-

successor trustee.   If Algiers Homestead is unwilling or legally incapable of being successor trustee, then Jefferson Guaranty Bank shall be named successor trustee.

9.8   Corporate Trustee.   A substitute corporate trustee shall be any national bank or bank chartered by any state of these United States of America having capital funds of not less than $15,000,000. at the time of appointment.

## X.   MISCELLANEOUS PROVISIONS

10.1 Withdrawal Powers.   For a period of thirty (30) days following notice of each donation of property to the trust, whether the donation be by original transfer or subsequent addition, the beneficiary shall have the power to withdraw from the trust property an amount ("withdrawal amount") equal in value to his share of the lesser of:

   a.   the donation; or,

   b.   the annual federal gift tax exclusion as from time to time amended.

For the purposes of this paragraph, amounts donated shall include premiums paid on life insurance policies held as trust property, whether paid or deemed paid by the Settlor, or by a third person. The withdrawal amount shall be determined and valued as of the date of donation.   As to amounts transferred or added by any given donor, the aggregate withdrawal amount during any calendar year shall not exceed the federal gift tax annual exclusion applicable to gifts made by the donor to the beneficiary applicable to that calendar year.   The power of withdrawal shall be non-cumulative.

-17-

   10.2 Notice.  Each time a donation subject to the withdrawal
power is received, the Trustee shall notify the beneficiary in
writing.  A power of withdrawal shall be deemed exercised upon
delivery to the Trustee of written notice of the beneficiary's
intention to exercise that power.  Unless the Trustee receives
notice of exercise within thirty (30) days after giving notice of
its availability to the beneficiary, the beneficiary's power of
withdrawal shall lapse.

   THUS DONE, READ AND SIGNED at New Orleans, Louisiana on this
30th day of December, 1992.

WITNESSES TO ALL SIGNATURES:

NAME: _____

NAME: _____

MICHAEL HEBERT
Settlor

MICHAEL HEBERT
Trustee

STEPHEN I. DWYER
Notary Public
Parish of Orleans
State of Louisiana
My commission expires at death

This is a certified true copy
of the original.

NOTARY PUBLIC

-18-

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

**NO: 2016-9632**                                             **DIVISION "M"**

### COURTNEY HEBERT, INDIVIDUALLY AS SOLE BENEFICIARY OF THE COURTNEY HEBERT IRREVOCABLE TRUST AND ON BEHALF OF THE COURTNEY HEBERT IRREVOCABLE TRUST

### VS.

### RICHARD J. HEBERT, RICHARD J. TOMENY, JR., LILLIAN LUCILLE LOCICERO AND FIRST NBC, A CORPORATION LICENSED TO DO AND DOING BUSINESS IN THE STATE OF LOUISIANA

FILED:_____

                          **DEPUTY CLERK**

### AFFIDAVIT

**STATE OF LOUISIANA**
**PARISH OF JEFFERSON**

BE IT KNOWN, that before me, the undersigned authority, personally came and appeared:

### COURTNEY HEBERT GRIFFIN

who, after being duly sworn, did depose and say:

I have read the Motion for Partial Summary Judgment filed herein by my attorney in the above-captioned matter and I respectfully submit that everything in said Motion for Partial Summary Judgment is true and correct. The Courtney Hebert Irrevocable Trust identified as Exhibit "A" in this Motion for Partial Summary Judgment and attached herein and made a part hereof as though copied herein *in extenso* is a true and correct copy of said Courtney Hebert Irrevocable Trust. I am the sole beneficiary in the Courtney Hebert Irrevocable Trust which Trust was established by my father Michael Allen Hebert on December 30, 1992. The Richard Hebert "acknowledgment" identified as Exhibit "C" in the Motion for Partial Summary Judgment and attached hereto and made a party hereof as though copied herein *in extenso* is a true and correct copy of said "acknowledgment."

I spent approximately $50,000.00 in attorney's fees in my legal fight against Richard Hebert and his attorney, Richard Tomeny - not counting the additional $12,800.00 Hebert and Tomeny took from my Trust to pay for Tomeny's attorney's fees. Said $12,800.00 is represented by the three checks attached hereto and made a

EXH B

part hereof as though copied herein *in extenso*.  The copy of the $170,517.75 check

attached hereto and made a part hereof as though copied herein *in extenso* was sent to

me by Hebert and was all there was left of my Trust as of October 19, 2015.

COURTNEY HEBERT GRIFFIN

Sworn to and subscribed
before me, this ___5___ day
of ___MAY___, 2018

Roy A. Raspanti, LSBA #11119
Notary Public

CASHIER'S CHECK                                111603304

**WHITNEY BANK**
COLLINS BLVD
October 19, 2015

84-15
654

$ $170,517.75

PAY TO THE
ORDER OF   COURTNEY HEBERT

**One Hundred Seventy Thousand Five Hundred Seventeen Dollars and 75/100**

NON NEGOTIABLE

COURTNEY HEBERT IRREVOCABLE TRUST
REMITTER

CUSTOMER COPY

BY
AUTHORIZED SIGNATURE

ADDRESS

EXH B IN
(ROBO)



Page 1          2          3 of 3
Close Date:          02/21/2014
Account Number:   46049230

02/21/2014          $3,000.00

02/21/2014          $5,500.00

EXH B INGLOBO



**1** **WHITNEY BANK**

2

Page:              3 of 3
Close Date:      01/23/2013
Account Number:  46049230

01/18/2013      $4,312.50

EXH B' IN GLOBO

# Acknowledgement

September, 25,2015

It is hereby acknowledged that as trustee of the Courtney Hebert Irrevocable Trust that the debt owed by the trust to Muriel Hebert (now deceased) in the amount of 106,000.00 is being paid to Richard Hebert, her heir according to her will.

It is also acknowledged that the debt owed to Lucille LoCicero of $219,000.00 has been paid.

Richard Hebert  trustee

EXH. e

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**
**STATE OF LOUISIANA**

NO: 2016-9632                                                           DIVISION "M"

**COURTNEY HEBERT, INDIVIDUALLY AS SOLE BENEFICIARY OF THE**
**COURTNEY HEBERT IRREVOCABLE TRUST AND ON BEHALF OF THE**
**COURTNEY HEBERT IRREVOCABLE TRUST**

**VS.**

**RICHARD J. HEBERT, RICHARD J. TOMENY, JR., LILLIAN LUCILLE**
**LOCICERO AND FIRST NBC, A CORPORATION LICENSED TO DO AND**
**DOING BUSINESS IN THE STATE OF LOUISIANA**

FILED:_____

                                           **DEPUTY CLERK**

**AFFIDAVIT**

**STATE OF LOUISIANA**
**PARISH OF JEFFERSON**

      BE IT KNOWN, that before me, the undersigned authority, personally came and

appeared:

                  **PATRICK M. LYNCH, CPA, CFF, CFE,**
                  **DABFA, CRFA, CPCU, CLU, CHFK**

who, after being duly sworn, did depose and say:

      The interest calculations for the Courtney Hebert Irrevocable Trust from March 12,

2012 through July 18, 2017, attached hereto and made a part hereof as though copied

herein *in extenso*, in the matter entitled *Courtney Hebert, et al v. Richard J. Hebert, et al,*

#2016-9632 in the Civil District Court for the Parish of Orleans are true and correct.

                                          _____
                                          PATRICK M. LYNCH

Sworn to and subscribed
before me, this **3** day
of **APRIL** , 2018.

_____
Roy A. Raspanti, LSBA #11119
Notary Public

EXH. D



# PATRICK M. LYNCH, CPA CLU, ChFC, CFE, CFF, DABFA, CrFA, CPCU

## SUMMARY

**Patrick Lynch** has 45 years of varied and in-depth business experience. He has practiced public accountancy for 40 years, with two "Big Eight" accounting firms and as the managing member of *Rogers, Lynch & Associates LLC*. He was a contract surety bond underwriter for 5 years before practicing public accountancy. His areas of specialization include the construction, health care, food manufacturing, asset based lending, insurance, and public utilities industries.

Lynch has held Vice President Positions with the three international insurance brokerage firms. He travelled extensively across the US designing risk finance programs and forming captive insurance companies in offshore and US domiciles for Fortune 1000 companies. In 1994, he was the recipient of the Sedgwick, now Marsh, Team Achievement Award for his contributions to the team effort to the development of Sedgwick's client relationship with Dow Corning.

He used these experiences along with his entrepreneurial spirit to found his own accounting firm, Rogers, Lynch and Associates LLC (RLA), One of the accomplishments of his firm was developing, marketing, and providing technical support of **S.T.A.R.S™.**, a software used by commercial lenders to monitor their receivable and inventory lines of credit, to the major commercial lenders in the US and UK. In conjunction with S.T.A.R.S™, RLA developed an audit continuing education program for commercial lenders which the National Association of State Boards of Accountancy (NASBA) approved for Certified Public Accountants CPE credit.

Lynch has taught graduate and undergraduate tax, accounting, forensic accounting, and fraud courses at the University of New Orleans, Loyola University, and Tulane University.

Lynch performs forensic accounting and fraud detection engagements for commercial lenders in conjunction with their asset-based lines of credit. Additionally, he provides financial accounting, tax, risk finance and contract surety bond consulting services to privately held companies.

He, also, has qualified and testifies as an expert witness in the US Bankruptcy Court. He has been interviewed on numerous occasions by Lee Zurik, Fox News 8's investigative reporter, regarding various incidents of public corruption. Other media personnel have sought his expertise in tax, and he frequently addresses organizations on tax and fraud implications. In 2011, he was appointed by Mayor Yenni to the City of Kenner's Streamlining Committee, a task force comprised of local movers and shakers charged with devising a plan to solve the city's $3.5 million budgetary short fall.

In 2013, *CityBusiness* selected Lynch to be a *CityBusiness* Money Maker. Money Makers are recognized as 50 professionals whose fiscal work has set the pace for their company and the region. Nominations were accepted throughout 2013, and a selection committee reviewed and chose the top candidates based on industry and community involvement, as well as their career achievements.

**Designations:**

- Certified Public Accountant **(CPA),**
- Certified Fraud Examiner **(CFE),**
- Certified in Financial Forensics **(CFF)**
- Diplomat—American Board of Forensic Accounting **(DABFA),**
- Certified Forensic Accountant **(CrFA),**
- Chartered Property and Casualty Underwriter **(CPCU),**
- Chartered Life Underwriter **(CLU),**
- Chartered Financial Consultant **(ChFC),**
- Associate in Risk Management **(ARM),**
- Associate in Insurance Claims **(AIC),**
- Associate in Fidelity & Surety Bonding **(AFSB),**
- Associate in Reinsurance **(ARe), and**
- Associate In Surplus Lines Insurance **(ASLI)**

# Professional Experience

### ROGERS, LYNCH & ASSOCIATES LLC - New Orleans, LA
1995-Present
Managing Member

Areas of Emphasis:

- Business Consultancy
- Forensic accounting
- Insurance brokerage and underwriting, with particular emphasis on designing risk finance programs
- Captive insurance companies formation, both offshore and domestically
- Contract surety bonding
- S.T.A.R.S.™ development, marketing, and technical support
- Editorial Advisory Committee of **Construction Business Review**
- Editorial Advisory Board of the **Journal of Forensic and Investigative Accounting**
- Speaker for The Risk and Insurance Management Society(RIMS) conferences, State CPA Society continuing education conferences, and Associated General Contractors(AGC) and Associated Builders and Contractors (ABC)

2

**Undergraduate/Graduate Courses in Accounting and Risk Finance**
1993 - Present

Institutions:

- Tulane University A.B. Freeman School of Business-
  - ➤ Financial Accounting , Professional MBA 6110
  - ➤ Accounting Management and Control, MS Management 6050
- Loyola University of New Orleans-
  - ➤ Courses Taught - Accounting Principles, Intermediate Accounting I & II, Cost Accounting, Advanced Accounting, Taxation I & II, Auditing, and graduate level Fraud Examination, Forensic Accounting, Financial Accounting and Managerial Accounting.
  - ➤ Courses Developed- developed the Forensic Accounting curriculum
  - ➤ Service- faculty advisor for Beta Alpha Psi. Served on the University Senate and the University Senate Finance Committee, the Undergraduate and MBA Curriculum Committees, judge for the ACG Louisiana Cup M&A Case competition, and serve on the Editorial Advisory Board of "The Journal of Forensic and Investigative Accounting".
  - ➤ Awards- Recipient of the 2008 College of Business Faculty Award for Outstanding Teaching and the 2010 and 2011 College of Business Faculty Awards for Outstanding Service.
  - ➤ Nominations- Nominated for the 2010 University Senate Faculty Teaching Award.

- The University of New Orleans Accounting principles, accounting in a health care setting, accounting for MBA students as well as  accounting for The  Executive Health Care Management Program
- Delgado Community College- Accounting Principles.
- Tulane University Guest Lecturer on  Financial Statement Fraud
- The Society of Certified Insurance Counselors **(CIC)**
- The Society of Chartered Property and Casualty Underwriters **(CPCU)**

*SEDGWICK (Now Marsh)- Nashville, TN*
1992-1995
Senior Vice President and Manager of The Risk Finance Consulting Practice

Responsibilities:
- Overall management of The Risk Finance Consulting Practice
- Production, supervision, and completion of consulting engagements
- Formation of captive insurance companies in offshore and US domiciles
- Taxation and Financial Accounting Counsel, to all US Brokerage Offices, regarding various financial insurance and reinsurance programs
- Recipient of the 1994 Team Achievement Award for outstanding contribution to the team effort to the development of Sedgwick's client relationship with Dow Corning

3

**COOPERS & LYBRAND ( Now PricewaterhouseCoopers) – Atlanta, GA**
1991-1992
Senior Risk Management Consultant

> Responsibilities:
> - Production and completion of consulting engagements
>   - ➢ Competitive marketing of insurance programs,
>   - ➢ Broker and Third party administrator service audits
>   - ➢ Property and casualty coverage audits
>   - ➢ Risk finance program design
>   - ➢ Cost allocation system design
>   - ➢ Formation of captive insurance companies in offshore and US domiciles
> - Risk Management Consultant to the LARTC for the construction of the mass transportation Red & Blue Lines.

**CORROON & BLACK (Now Willis) – Nashville, TN**
1987-1991
Vice President and Senior Risk Management Consultant

> Responsibilities:
> - Design of casualty risk finance programs that optimally satisfied the client's financial and operational objectives, including the formation of captive insurance companies in offshore and US domiciles
> - Chairman of the Construction Industry Division's Risk Management Committee.

**JOHNSON & HIGGINS OF LOUISIANA, INC. (Now Marsh)- New Orleans, LA**
1982-1987
Construction Industry Coordinator

> Responsibilities:
> - Management of Louisiana Construction Division's sales, marketing, and account servicing activities
> - Contract surety bonds marketing
> - Development of new and fostering existing insurance company relations
> - Active role in the development and sales of Johnson & Higgins' Davis - Bacon Program -- "CONSTRUCT".

*DELOITTE HASKINS & SELLS (DELOITTE & TOUCHE) - New Orleans, LA*
1977-1982
Senior Accountant

    Responsibilities:
- Audit engagements  planning and supervising (specialized in the Construction, Health Care, And Public Utilities Industries)
- Firm member of National Construction Industry Practice Committee

*UNITED STATES FIDELITY & GUARANTY COMPANY( Now St. Paul) - New Orleans, LA*
1972-1977
Contract Surety Bond Underwriter

    Responsibilities:
- Contract surety board accounts production and underwriting throughout Louisiana

**Academic Experience:**
Tulane University A. B. Freeman School of Business, Adjunct Professor 2015 -
Loyola University, Assistant Professor 2006 through 2015
Tulane University, Guest Lecturer on the subject of Financial Statement Fraud 2003 to 2010
University of New Orleans, Adjunct Professor 2004 to 2006 & 2016 -
Delgado Community College, Adjunct Professor 2005
Society of CPCU, Adjunct Professor 1993 to 1998
Society of CIC, Guest Lecturer 1995 to 1998
Executive/CPA continuing education 1993 through 2004

**Courses Taught:**
- Intermediate Accounting I & II
- Individual & Corporate Taxation
- Auditing
- Advance Accounting
- Cost Accounting
- Accounting Principles
- Financial & Managerial Accounting - Undergraduate & Graduate Levels
- Forensic Accounting – Graduate level
- Fraud Examination – Graduate level
- Principles of Fraud – Undergraduate level

5

**Education:**

- University of New Orleans 1972
  BS General Business Administration

- University of New Orleans
  Required accounting courses to sit for the CPA exam
  Passed the CPA Exam the first time taken May 1977

- University of New Orleans 1987
  MS Accounting - Taxation Option (This is a terminal degree.), Phi Kappa Phi

**Publications:**

**CPCU Journal:**
- "A Strategic Approach to Designing the Optimal Primary Casualty Risk Financing Program"
- "What's Your Authoritative Tax Source?"
- "Excess Liability Limit Determination: A Rational and Systematic Approach"
- *"Finite Risks Insurance and FASB113 Accounting and Reporting for Reinsurance of Short-Duration and Long-Duration Contracts "*

**Construction Business Review:**
- "Preparing for A Hard Insurance Market"

**John Liner Review**
- "Designing the Optimal Primary Casualty Program: The General Patton Approach"

**Risk Management Magazine:**
- "Will FASB #94 Close the Purest Captive Door?"
- "Solving the Puzzle of Cost Stabilization Plans"

**Captive Insurance Company Reports**
- "Solving the Puzzle of Cost Stabilization Plans"

**The Secured Lender:**
- "To Distribute Or Not to Distribute The Asset Based Lending Field Exam Report?"
- "The Asset-Based Borrower Can Survive the Workers' Compensation Crisis"

**Surety Scope:**
- "Forgive Them for They Know Not What They Do" A Commentary Of How A Surety Bond Underwriter Can Jeopardize Favorable Tax Treatment Accorded Debt Service Payments To The Contractor's Shareholder-Creditor

**The Small Business Controller:**
- "Risk Retention Level Determination: A Comprehensive Approach"
- "Can Small Business Survive the Worker's Compensation Crisis?"

6

**Journal of Construction Accounting & Taxation**
- "Can The Construction Industry Survive the Worker's Compensation Crisis?"
- "What Is the Optimal Primary Casualty Risk-Financing Program for the Construction Contractor?"

**Healthcare Financial Management**
- "Involving Physicians in Cost Reduction Strategies"

**The Sedgwick White Paper**
- "What's Your Authoritative Tax Source?"
- "Determining Optimal Risk Retention in the Healthcare Industry"

7